Good morning. I'm Greg Rantham for the appellants. Do you want to try to save any time or not? I do. I would like to save three minutes and rebuttal. I'll try to remind you. Thank you. And I just want to address really two points that I believe are the main points. The Ninth Circuit instructed remand for the trial court to determine whether California recognizes a nominee theory of real property ownership. And if so, then what are the factors governing that form of ownership? And we went back to the trial court judge who entered an order, and in that order he referred to a United States District Court case from the Southern District, which discussed three California cases, Park-Merced, Baldessari, and Lewis-Hankins. And he determined that California did recognize a nominee theory of ownership, found that there was no factors in California cases that discussed that form of ownership, and therefore said California would refer to the federal cases that look to the six-part test that the IRS has applied in the administrative tax cases. And so I think that the thread on which all this rests are those three California cases. Go ahead, please. Do you disagree that California recognizes the theory of nominee ownership? Absolutely. But I think it's more a case of – Why? Well, because whenever the name nominee has come up, it hasn't discussed in any of those cases that it's a separate form of property ownership. If we look at these three cases, Baldessari was a case in which the IRS filed a nominee alter ego lien, and the owner of the property filed suit saying that it was unconstitutional because there was no pre-hearing notice to the owner of the property. You know, a nominee lien is some other person owes the taxes, and the IRS is saying that that third person has an interest in the property, and now they've created a lien. And Baldessari, he was arguing, you can't do that without at least a pre-filing hearing. Let me – because we don't have a lot of time here, let me just cut to the chase with you. The reality is, as the Supreme Court and others have indicated, what we really have to do here is for us, as a de novo matter, to determine whether if this matter were presented to the California Supreme Court, whether it would find a nominee status in this case. Is that not correct? Absolutely. But when it would go to nominee, it would do exactly what the Court of Appeal did in Park-Merced. Park-Merced is really the most relevant – So you think that the six-factor test is just not going to fly? No. It would go to – Even though it's federal law that controls it. This is a federal tax lien case. Well, in terms of the assessment of the taxes, it's all a federal procedural. But when we get to the nature of what's being attached, you have to look – the Supreme Court has been clear that you must look to the state law to see what is the interest of the taxpayer. That's why I was just asking you, is it not correct that our job, if we do this, is to determine in our best judgment whether if this matter were presented to the California Supreme Court under these facts, whether it would find that your clients were acting as nominees. Isn't that correct? In essence, but I think it's kind of a facile type of reasoning or statement, look at what the Court did in Park-Merced. Okay, but that's not binding on us, is it? Well, I believe California case law is binding. California case law says that on facts like this, we go to the resulting trust doctrine. And there's a gain. We only have a resulting trust if there's a conveyance by the parents to the children. That never occurred here. So that can't help you in any event. Then we would win the case. I mean, I think you'd have to – if that's your opinion, then we – judgment must be ruled in my client's favor. That means Joseph Adam transferred this property to Chandra Adam. Joseph Adam was the legal and beneficial owner, and he didn't have any taxes assessed against him. But that's not a resulting trust, is it? No. But my clients win. There's no real reason, then, for a nominee lien to have filed. If they acquired their title from Joseph Adam, then Dino Adam has no interest in this property. Are you saying that Dino Adam acquired an interest when title went to his children? Let me ask you this. You've argued these in your brief, but there are a few things that I'm hoping you can clarify for me. One of the issues regarding standing that I'm interested in is this world savings lien that – who are your clients? The children? Yes. Okay. That they got. Was this a no-doc loan? Oh. You know, during that period, people just signed up and they got loans. Is this one of these? I couldn't give you a valid representation as to what the loan was. The record doesn't say. Does the record say whether they got title insurance? Absolutely. And this is why this is – Is that in the record? That they got title insurance? Yeah. Well, if you go to the – all the documents were pretty much entered in the trial court. I don't know if it's in the excerpts of record, but on the settlement closing statements, the items would have been indicated to pay for title insurance. Okay. If it's in the record, it would be helpful to know. At that time, there was a pick-a-payment loan. Is this one of those? Does the record indicate? It was a negative arm is what I understand it to be. Okay. Meaning they were not fully amortizing the principal over so you would have increasing principal. So they got to, in a sense, pick how much they wanted to pay, but it increased the amount that was owed because of the interest and they would pay the principal, right? And I don't know if they gave them a pick-a-pay like you can go one, two, or three. That's just a common name for it. It's not a technical term. But the more important loan is the home equity loan that they are on the hook for. It's a recourse loan, and if you're talking about who has the beneficial use of this property, Luke Adams had it for 28 years. He lives there. And if you're saying that Dino Adams is a beneficial owner because he lives there, well, what about Luke Adams? He lives there. Who signed four loans on the property? My client, Luke Adams, has signed for four loans, two refinances and two home equity loans. Who's at risk here? If this court says that Luke Adams is not the beneficial owner, those loans should be set aside because there's warranties and the deeds of trust that you're the full legal and beneficial owner. You could set them aside. And the title company is on the hook. Well, let me ask you, under California law under 580D, if there's a foreclosure, then your client would have no deficiency obligation, right? Only on the first, but not on the second. Well, if you foreclose on the second, you still have. Well, if it's not judicial. Yeah, yeah. So you're saying, what would it be, a 580A? Well, yeah. With an equity of redemption? You mean if they sued him judicially, it would be a deficiency? Yeah, in other words, that's the only way we can get a deficiency. It would be a sold-out. What you have is a sold-out junior. The first would foreclose, and then the second would say, hey, you owe me the money. And he's on the hook for it. It's a full recourse loan. You know, to say that he doesn't have standing and isn't a beneficial use person of this property, I think, is just stretching credulity. Do you want to save any of your time yet? Yes. Can I ask one question, please? How do you – the one parcel of land case, is that in favor of your client or not in favor of your client? Are we talking about standing on a wrongful levy versus? Well, I mean, I think the government cites that as to why your client wouldn't be a beneficial owner of the property. Well, can I address it in the bottle? Sure, yes. Okay, thanks. Very good. We'll hear from the government. May it please the Court. Thomas Clark on behalf of the United States. This concept of nominee ownership of property is not something that's novel. I mean, it's in Black's Law Dictionary. Nominee is defined in Black's as a party who owns their legal title for the benefit of another person who really owns the property. So there's nothing novel about it. And the question here is what are the – what's the test for determining nominee ownership and what factors do courts look at? I'm focused on standing, if I can jump to that, if you don't mind. Yes, please. So it seems like you can – or would you concede that Luke and Chandra Marie have Article III standing, and it's really a question of whether – about prudential standing. Would you agree with that or disagree with that? Well, I don't know we would agree with that because I don't see what their injury in fact would be, and that goes to Article III standing. If they're not the owners of the property, they suffer no loss here. You know, this is – at this point in time, the IRS has filed a lien against the property. So it – you know, that's a cloud on the title. But didn't they use it to collateralize full recourse loans in their name? Wouldn't that be considered an injury in fact? Well, but what injury would they suffer? I mean, if the bank forecloses upon their – on these properties, they suffer no loss if the property is not theirs. I mean, that they have no loss then. I mean, that they might be personally liable if it's a recourse loan, but if they sign the promissory note, they're personally liable anyway, and the bank has the option of going either after them personally or against the property. That's not something that gives them standing. I mean, they're not injured here because the IRS filed a lien against the property if they are not the true owners of the property. There are some cases in various circuits that deal with joint tenancy ownership where the service files a lien against one of the tenancy owners and the other tenant was deemed not to have certainly prudential standing, perhaps actual standing, because that person's interest was not directly affected. Be interested in the government's position vis-a-vis this case. Here you have the parents who, based upon the findings of the district court, have at least five of the six criteria, the Hanover criteria. They've lived there. They've made the payments and so on and so on. The lien is against Dino, I gather, is the father. In what way are the two children impacted by an IRS lien against the father? Is that analogous to the joint tenancy cases? In the joint tenancy cases, there are two joint owners who are the real owners of the property. So, yeah, the joint owner might have a claim if that lien reaches that joint owner's property interest. Now, in those cases, I mean, I think the courts hold that, no, the lien is only against the one taxpayer's property, and that's why the joint owner does not necessarily have any standing to assert the claim. So you don't find those analogous? Well, I think they're different. I think they're different because, you know, our position is that the children here, Luke and Chandra, have no real interest in this property. So the IRS's lien does not injure them. Well, they don't have legal title? Well, they have, I guess, you know, in nominee theory, they have bare legal title. Right. And I guess, is there any court of appeals that held that a person who holds legal title property lacks standing? Well, I can't think of a prior court of appeals that has held that a nominee would lack standing, no. The reason I'm focused on this, counsel, is this case has been up here before. Yes. It was sent back, and with some clear directive to the district court, to provide a reasoned explanation as to whether they had standing to quiet these folks, Luke and Chandra Marie, had standing to quiet title against the government. And the district court, I don't know, or would you argue they provided a reason, the district court provided a reasoned explanation of that? Well, yes, we do, for the reason stated by the district court, as well as for the reason stated in our brief, that, you know, as I've already said, and I don't know if I can say it any more clearly, I mean, that's the best argument, is that, you know, the IRS filed a lien, and it attaches to Dino's interest in the property. And if the children, Luke and Chandra, have no real interest in the property other than bare legal title, that then they will suffer no economic injury because of the IRS's lien. And so they don't have standing. And I don't, I can't think of a prior court of appeals that has said that. Okay. That's what I'm looking at. And it seems like all the cases that you cite stand for the proposition, which I don't know how remarkable it is that a person needs at least legal title to property to quiet title in it. And I think the question here is what they had enough. And so what's your best case that a person needs to be a beneficial owner of the property to quiet title in it? Well, I think that's some of the cases that we've cited. Well, I think there's one, I think the one parcel of land case, but is that your best case? That may be the best case, yes. And why is that? Tell me. Why? Well, I think the question on the standing is not really who owns bare legal title, but who suffers the injury on account of the IRS's lien that is filed against the property. I'm just trying to see the law that supports it. Can a nominee ever suffer that kind of injury? I have not yet seen the argument that the nominee would suffer any economic injury by way of the IRS lien. I mean, the lien is a cloud on the title. That's not enough. I don't know why it would be, because if the taxpayers here are the true owners of the property, the lien is a cloud on title. It affects the marketability of the title. But when the property is sold, obviously it's our view that the parents are the true owners of the property. Mr. Grantham, let me pose you a hypothetical. Let's assume that I give you a quitclaim deed to the Brooklyn Bridge and all the land surrounding it where all the cables are and so on, and you go to the bank and get an equity loan on the Brooklyn Bridge. I guess we could both agree that would probably be a nominee type of ownership, because I don't own the Brooklyn Bridge. Under the circumstances, if the IRS filed the lien against me, how would that affect the service's concept of nominee ownership in this case? Okay, that's if you borrow money to buy the property? No, no, if you borrow the money. I quitclaim my interest, which is nonexistent, in the Brooklyn Bridge, and I give that to you. Okay. So you have that, and you go to the bank, and you get a loan against it with a lien on your bare legal title interest, whatever that may be, which you have received by virtue of my quitclaim deed in the Brooklyn Bridge and the surrounding land. I guess what I'm trying to find from you is, is this in any way analogous to the kind of situation here? Okay, and I'm the delinquent taxpayer, and the IRS is filing a lien against me, and can it claim that the Brooklyn Bridge? Or let's say the IRS files a lien against me, although that doesn't really work here because these folks did own that land. I never owned the Brooklyn Bridge, so maybe it's a bad example. I guess what I'm trying to show is that the Brooklyn Bridge, if I don't own it, and I give you a quitclaim deed, the fact that you show up on the chain of title doesn't mean anything. It's a wild deed, in effect. It doesn't tie anything into the title. Yeah, I mean, I think we're dealing here with economic realities, and the economic reality in that situation is that neither of us have ever owned the Brooklyn Bridge, so the IRS would never have a lien on that. But the parents here, do they own the house? Would you say they're the real owners of the house? Yes, that's what the district court held, and we think the district court correctly held so. Yes. And so, again, my best answer on the standing argument is that the children here suffer no economic harm. They have no injury, in fact, and, therefore, Well, let's say we do find that they have at least prudential standing, and we send it back to the district court. What happens then? You'd have to prove up your case on the lien, right? Well, if the court held that there is standing, then it would have to go back because they made procedural challenges to the validity of the lien, which this court has held that the real owner of the property can do. So that's what it would be, yes. Is it the government's position that with respect to nominee ownership, it's almost a fact-by-fact inquiry or case-by-case factual inquiry because the nature of the nominee ownership varies tremendously from case to case? I think these are intentionally factual cases, yes. And although the court routinely looked to six common factors that almost everybody looks to, I mean, just as in any other case, you want to be wary of an overrigid application of the facts, and you consider the totality of the circumstances. Any other questions by my colleagues? Just one question. I can glean from the record here that the district judge wasn't too happy that this case was sent back. Am I correct in that? You know, I can only speculate as to what the district court gentleman is thinking, but. Okay. Let's hear from counsel for the appellate. Well, two things. With regard to this, you know, what is the nature of the test, the real difference is in the third factor, which says that if there's a close relationship between the taxpayer and the nominee, that shows that he's a nominee. And in California, if you have a parent transferring title to a child or a spouse, that's a game changer. It means that the presumption was a gift and the. But that's the resulting trust we talked about earlier. There was no transfer from the parent to the child here. And there are six factors, and it's a totality of the circumstances test. But that basically, then you're saying that a legal owner is in control of the property. When Joseph Adams transferred it to Chandra, he controlled the property, not Dino. But the argument is Dino controlled it. The guy was just his nominee. Forgive me, counsel. I thought I was trying to understand your point. I thought you said that with respect to the third factor, that if the parents transfer the property to the child or children, that's a game changer. And I said, in this case, that didn't happen, did it? And your answer was something quite different. But they never transferred the property directly to the children, did they? I beg to differ. It didn't come from an uncle or something like that? Their cousin was on trial. Cousin. And the court said that he was a mere nominee. And under that theory, that means that the beneficial owner and the people who controlled the property and controlled their agent, their nominee, was Dino and Trina, who therefore transferred the title to their children. Otherwise, if you say it was the cousin who transferred it, then what is the tax on that? So you're saying IRS can't have it both ways, right? You can't have it both ways. Okay. Good way to end. Your time is up. Thank you very much. Thank you. Appreciate your argument.
judges: Zouhary, Smith, Murguia